MERCHANTS BANK OF FAYETTEVILLE v. T. S. LUTTER-
LOH and another.

*Interest—Usury.*

1. A note given, March 4th, 1875, in renewal of a prior obligation contracted in 1871, is subject to the law regulative of the rate of interest enacted March 12th, 1866.

2. By that law (1866) the plea of usury is made a matter of *defence*, ex
tending to the defeat of the interest only; and *hence*, one who has paid
usury on a contract then made cannot *recover back* the interest so paid
by pleading the same as a set-off or counter-claim to an action on the
contract.

CIVIL ACTION tried at Spring Term, 1879, of CUMBER-
LAND Superior Court, before *McKoy, J.*

The plaintiff bank alleged that on the 4th of March, 1875,
the defendant, Lutterloh, promised by his promissory note
to pay his co-defendant, T. J. Jones, the sum of three hun-
dred and fifty-five dollars, sixty days thereafter, with inter-
est at eight per cent from maturity ; and that the defendant,
Jones, endorsed the same to plaintiff.

The defendants answering alleged that the note was given
in renewal of a prior obligation, and that both were usurious;
that plaintiff in taking the renewal note sued on, charged
and received from defendants, as interest in discounting the
same, eighteen per cent., or one and a half per cent a month;
that the note sued on was the last renewal given for the
amount of a draft of four hundred dollars, dated on the 8th
of August, 1871, drawn payable sixty days after date by A.
J. Jones, in favor of defendant, Lutterloh, on the defendant,
T. J. Jones, and accepted by him, and endorsed by Lutter-
loh in blank, which transaction was for the accommodation
of said A. J. Jones, who negotiated the note with A. W.
Steel & Co., at a usurious rate of interest, to-wit, eighteen
per cent.; that a draft in substitution therefor made by de-
fendant Lutterloh, and endorsed by defendant Jones, was
transferred by said Steel & Co. to the plaintiff, well knowing
the same to be usurious ; that the obligation while in the
hands of plaintiff was renewed by defendants from time to
time, the plaintiff at each renewal charging the defendants
usurious interest.

The defendants by way of counter-claim in this action,
further alleged that since the date of the original transac-

tion (August 8th, 1871,) in renewal of which, notes were given as aforesaid by them from time to time, including the last one, which is the subject of this action, they have paid to plaintiff and to Steel & Co. on the same, the sum of three hundred and twenty-one dollars and sixty cents, for which they have been allowed as credits on the principal, only the sum of thirty-five dollars; and that defendants claim, as a set-off to plaintiff's demand, a credit for the full amount of the aforesaid payments, and rely upon the plea of usury as a protection againt said demand.

The plaintiff demurred to the answer as to the counter-claim, and assigned as cause, that the counter-claim was not such as that an independent and distinct cause of action could be maintained against the plaintiff, as the answer showed that the interest paid and alleged to be usurious, was paid by defendants knowingly and with full knowledge of all the facts. The court sustained the demurrer and the defendants appealed.

*Messrs. Gray & Stamps*, for plaintiff:

A counter-claim or set-off must be a claim upon which an action of debt or *indebitatus assumpsit* will lie. *Lindsay* v. *King*, 1 Ire., 401; *Battle* v. *Thompson*, 65 N. C., 406; *Francis* v. *Edwards*, 77 N. C., 271. Money paid in execution of an illegal contract when both parties are *in pari delicto*, cannot be recovered back. Chitty on Contracts, 601; *Com'rs* v. *Setzer*, 70 N. C., 426; *Com'rs* v. *Com'rs*, 75 N. C., 240; *King* v. *Winants*, 71 N. C., 469; *Latham* v. *B. & L. A.*, 76 N. C., 145. Statutes at time payment made, imposed no penalty for taking usurious interest, Bat. Rev., ch. 114, but only that such interest could not be recovered in a suit for that purpose.

*Messrs. Guthrie & Carr*, for defendants.

DILLARD, J.  On the 8th of August, 1871, A. J. Jones drew a bill for $400, payable at sixty days on T. J. Jones, who accepted to pay the same, and after endorsement thereof by T. S. Lutterloh, all for accommodation to the drawer, A. J. Jones procured A. W. Steel & Co. to discount the same at the rate of eighteen per centum per annum, or one and a half per cent per month for the time it had to run.

Afterwards Lutterloh, with his co-defendant as surety, executed his note to A. W. Steel & Co. as a substitute for the original bill drawn by A. J. Jones, and while in their hands several times renewed it at the same rate of interest, and finally it was negotiated to the plaintiff who had notice of the usurious rate of interest on which it had been discounted and renewed as aforesaid.

On getting into the plaintiff's hands the statement in the complaint is, that it was from time to time renewed, how often not specified, at the same usurious rate, until the 4th of March, 1875, when just before the going into effect of the act of 1874–'75, ch. 84, the note, on which the action is brought for $335, was executed.

The defendants allege that since the debt was originally made, in the whole round of renewals to A. W. Steel & Co. whilst they were owners, and since then to the plaintiff, there have been paid sums of money for interest making an aggregate of $321.60 of which only the sum of $35 has been applied to extinguish any part of the principal money, and in their defence they make a counter-claim or set-off against the plaintiff for the various sums of interest paid before the execution of the note sued on in this action.

To the counter-claim the plaintiff demurred, on the ground that the sums constituting the same are not such as could be the subject matter of an independent action, having been paid willingly and with a full knowledge of all the facts, and on the hearing His Honor sustained the demurrer and from that judgment the appeal is taken.

10

1. Anciently in England many doubts were entertained as to the propriety of taking a price or reward for the use of money, *in foro conscientiæ*, and at one time it was held to be a misdemeanor and indictable as such on the idea that it was an iniquity, and criminal. Afterwards the taking of interest was impliedly authorized by 37 Hen. VIII., which fixed on ten per cent as being the ultimate limit to which the lender might go, and by different enactments the rate was changed from time to time, until at last the legal rate was fixed at five per cent as the ultimatum, at which it has ever since stood and now stands, with a statutory declaration of invalidity of every contract or security tainted with usury and a *qui tam* action to any one who would sue for the same.

Under such state of the law in England it was much disputed whether the excess of interest paid beyond the legal rate could be recovered back in a common law action, on the ground that the receipt and payment of it contrary to the statute was a *delictum* and therein the borrower was equally participant with the lender; but at length it was settled that a distinction was to be taken between statutes passed to protect the weak and necessitous from being overreached and oppressed, and those enacted from motives of policy and general expediency, in the former of which the parties were held as not equally criminal, but in the latter, *in pari delicto.* Comyn on Usury, 5 Law Lib., 211; *Clark* v. *Shee*, 1 Cowper, 197; *Browning* v. *Morris*, 2 Cowper, 790.

Under this distinction the court held that in gaming contracts and the like, prohibited by statute, the thing prohibited was done from public policy and general expediency; and so, if parties paid anything under such contracts they did so in equal fault and could not have remedy to get it back on the maxim *volenti non fit injuria.* But in the case of contracts prohibited by the statute against usury, it was to be taken that the borrower in the transaction was not

free, but a slave to the lender, and therefore in this case, after payment of the usurious interest the maxim *in pari delicto* had no application and a recovery of the excess might be effected in the action of *assumpsit* on the count for money had and received.

2. Conformable to this state of the English law was our statute law and the right of parties prior to 1866; and up to that time, the borrower was regarded as under necessity taking away his freedom, and not of equal guilt with the lender. Accordingly it was provided that the usurious contract should be void and the whole amount forfeited, and the lender be subject to pay double the whole amount if he received the usurious excess, in a *qui tam* action. Rev. Code, ch. 114.

By the act of 1865–'66, ch. 24, the legislature giving expression to the popular will on this subject, repealed the 114th chapter of the Rev. Code and in lieu thereof enacted in substance that six per cent should be the legal rate of interest, with liberty to stipulate on a loan of money but on no other consideration, for a rate so high as eight per cent, provided the rate and consideration were expressed in the obligation, with a declaration of validity to the contract under any circumstances as to the principal money lent, and without any forfeiture except of the entire interest on plea of the borrower, in case of an agreement to take more than six per cent where no rate was named, or more than eight where the rate is named.

Obviously by this enactment a new theory was introduced, and now the view obtained, that money like an article of property or merchandise ought to be regulated by the market, and the borrower be at liberty to pay for the loan of money on his own estimate of advantage and benefit to himself therefrom, without interference of law further than to fix a rate beyond which interest should not be recoverable in the courts, and to provide a defence against its collec-

tion, if the borrower in the exercise of his option choose to interpose the plea of usury. Accordingly, under this statute, the contract tainted with usury and formerly held void is now valid in any and every event for the principal. All penalty for receiving usurious interest recoverable by the party aggrieved or any one who would sue for the same is taken away, and a mere privilege of defence personal to the borrower is provided for, limited to a forfeiture of the entire interest on the note or obligation; and to the end that the defence may be ample and complete, if the borrower in his discretion should resort to it, he is authorized to examine the lender as a witness.

From these terms of the statute, the statutory remedy provided for the borrower extends merely to the defeat of the interest on the note or obligation unpaid, and does not embrace any remedy as to the interest already paid; and it seems to us that in the view of the legislature the borrower was no longer to be regarded as under such necessity as to take away his free will, but as being competent to act freely, and that, therefore, if he paid what he need not have paid, he should be barred by his act, and not have remedy to recover it back on the ground of his having paid it willingly and freely. If it was intended that the usurious excess paid should be recovered back, why was not a remedy therefor furnished as in the old law, Rev. Code, ch. 114, and as provided for in a remedy prescribed for the recovery of double the amount of interest so paid in the act of 1876–'77, ch. 91?

3. This our construction of the act of 1865–'66, as to the non-existence of a remedy to recover usurious interest paid, derives support and confirmation in our view from the course and terms of the legislature on this subject since: The act of 1874–'75, ch. 84, re-enacts the invalidity of all contracts tainted with usury on plea of the borrower and a forfeiture of double the amount lent to any one who will sue

for the same, and the act of 1876–'77, the one now in force, re-adopts the law of 1865–'66, with a forfeiture of the inter-est unpaid and a remedy given to the party for double the amount of all the interest paid; and the provision of a remedy in those two statutes extending to usurious interest paid amounts to a legislative construction that no such rem-edy existed for usury paid under the act of 1865–'66. The interest paid in the case under consideration was all paid, and the note now in suit was given, during the time that the act of 1865–'66 was in force.

4. Applying these views, let us see what is the result: The answer avers the loan originally to have been $400 and interest paid in renewals to A. W. Steel and Co., and since, to the plaintiff, in all amounting to $321.60, which was ap-plied to the interest, and the overplus to the principal, so that on the day the note now in suit was given, the princi-pal was reduced from $400 to $355; and it then shows forth that the present note was executed on the 4th of March, 1875, in the interval between the passage of the act of 1874–'75 and the day named for its going into effect; and the demurrer admitting these facts, in point of law, the con-clusion is, that payment of interest having been made freely and willingly, and located and applied to the interest as such, and in the settlement with the plaintiff again recog-nized as payments on the interest, and in small part on the principal at the giving of the note now sued on, the defen-dants have not the right to recover therefor and be allowed the same by way of counter-claim and set-off against the plaintiff's demand.

We therefore hold that His Honor was not in error in sustaining the demurrer and holding that defendants were not entitled to a counter-claim or set-off for usurious inter-est paid anterior to the execution of the note in suit under the act of 1865–'66.

No error.                                        Affirmed.